IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Rogelio Saldana Hernandez, ) | C/A No. 5:11-00641-TLW-KDW |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Report and Recommendation |
| MD, ENT Williams Barfield, III; MD CD Rex A. Blocker; ) | |
| PA HAS Rosario L. Fuertes, ) | |
| Defendants. ) | |

Plaintiff Rogelio Saldana Hernandez ("Plaintiff"), is a federal prisoner in the Federal Corrections Institution in Edgefield, South Carolina ("FCI-Edgefield"). Plaintiff filed this action pro se seeking compensatory damages pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)[1] for violations of his constitutional rights by Defendants' alleged acts of medical malpractice and negligence that occurred when he was incarcerated in FCI-Edgefield.[2] ECF No. 1. This matter is before the court on the Motion to Dismiss, or in the alternative, Summary Judgment filed by Defendants Blocker and Rosario[3] on September 19, 2011, ECF No. 56, and the Motion to Dismiss filed by Defendant Barfield on September 20, 2011, ECF No. 59. As Plaintiff is proceeding pro se, the court advised him in *Roseboro* orders regarding the importance of dispositive motions and the need for him to file adequate responses.[4] ECF Nos. 57, 60. Plaintiff filed opposition to Defendant

---

[1] In *Bivens*, the United States Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983 against state actors.

[2] At the time Plaintiff filed his Complaint he was a detainee at the Torrance County Detention Center ("TCDC") in Estancia, New Mexico.

[3] Plaintiff incorrectly identified this Defendant as Rosario L. Fuertes. Defendant's correct name is Luisa Fuertes Rosario. *See* Defs.' Mot. and Rosario Decl., ECF Nos. 56 and 56-3.

[4] On September 20, 2011 and September 21, 2011, United States Magistrate Judge Paige J. Gossett entered "*Roseboro* orders" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th

Barfield's motion on October 21, 2011, ECF No. 78, and to Defendants Rosario and Blocker's motion on October 25, 2011, ECF No. 79. In addition, Plaintiff filed two Motions to Amend his Complaint, and a Motion to Appoint Counsel. ECF Nos. 64, 70, 80. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.[5] Accordingly, the undersigned enters this Report and Recommendation for the court's review.

I. Relevant Factual and Procedural Background

The facts as viewed in the light most favorable to Plaintiff are as follows. Plaintiff is currently imprisoned at FCI-Edgefield where he is serving a sentence for Re-Entry of a Removed Alien and Supervised Release Violation. ECF No. 56 at 1-2. Plaintiff filed his initial Complaint on March 17, 2011, ECF No. 1, but moved to amend his Complaint on June 3, 2011, ECF No. 25. The court granted the motion, and Plaintiff submitted an Amended Complaint on June 29, 2011, ECF Nos. 29, 31. In his Amended Complaint, Plaintiff asserts claims for medical malpractice and negligence in violation of his Eighth Amendment rights regarding the Defendants' treatment of a facial fracture Plaintiff received after he was assaulted by another inmate. ECF No. 31-1 at 3. Plaintiff alleges that on August 8, 2008, he was injured when another inmate assaulted him. ECF No. 31-1 at 2. The medical staff at FCI-Edgefield examined Plaintiff and treated the injuries to his eyes and lips. ECF Nos. 31-1 at 2, 56-2 at 11. Plaintiff contends that his pain persisted and on August 15, 2008, x-rays were taken. ECF No. 31-1 at 2. A consultant radiologist advised Defendants Blocker and Rosario that Plaintiff had a complex

---

Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).
[5] On January 2, 2012, the matter was reassigned from United States Magistrate Judge Paige J. Gossett to the undersigned. ECF Nos. 87, 88.

fracture to the left side of his face. *Id.* Plaintiff alleges that on the same date, August 15, 2008, he was taken to the Aiken, South Carolina Regional Hospital and treated by Defendant Barfield, the Ear, Nose and Throat Specialist ("ENT"), who informed Plaintiff of the complex fracture and "told [Plaintiff] that he couldn't see clearly the CT Scan pictures and that [Plaintiff] should be brought back to the hospital in 10 days."[6] *Id.* Plaintiff indicates that he was seen again by Defendant Barfield on October 21, 2008, and Dr. Barfield "believed that was to [sic] late and [Plaintiff] had healed." *Id.*

On December 1, 2008, Plaintiff was seen by medical staff for a follow-up appointment. ECF No. 56-2 at 42. Plaintiff inquired about the status of a new CT scan, stated he was experiencing facial discomfort, and reported problems closing his left eyelid. *Id.* Plaintiff described his pain level as a 3.[7] *Id.* A physical examination failed to reveal any reasons for Plaintiff's difficulty closing his left eyelid, and he was continued on ibuprofen for pain management. *Id.* at 42-43. On December 16, 2008, Plaintiff was transported to the local community hospital for a repeat CT scan. ECF No. 56 at 8. The results of the new CT scan were compared with the CT scan performed on August 15, 2008. *Id.; see* ECF No. 56-2 at 44. The scan revealed significant healing of the left inferior wall orbital floor fracture, however the floor remained depressed. *Id.* The report noted non-ossification of the fracture involving the inferolateral orbital wall, significant healing of the lateral maxillary wall, and all fracture fragments in near anatomical alignment. *Id.* The final impression of the CT scan was noted as

---

[6] Plaintiff's medical records from Aiken Regional Medical Center do not indicate that Dr. Barfield treated Plaintiff on August 15, 2008. *See* ECF No. 56-2 at 11-24.
[7] The Bureau of Prisons ("BOP") uses a pain scale of 0-10 to measure a patient's self-reported pain intensity. A rating of 0 means no pain, 1-3 mild pain, 4-6 moderate pain, and 7-10 severe pain. Blocker Decl., ECF No. 56-2 at 2.

3

"[s]ignificant healing of comminuted left facial tripod fracture as described with minimal residual deformity/depression as described." *Id.*

On January 12, 2009, Plaintiff was seen during a sick-call appointment. ECF No. 56-2 at 48. Plaintiff requested the results of the repeat CT scan, complained of pain on the left zygomatic area (level 2 mild), and felt his left cheek was weak. *Id.* An examination revealed slight flattening of the left maxillary area, left lower periorbital lag, and tenderness of the left maxillary area. ECF No. 56-2 at 49. Plaintiff was prescribed naproxen for pain management, and instructed to follow-up at sick-call as needed. *Id.*

On January 26, 2009, Defendant Barfield saw Plaintiff for a follow-up appointment at the request of Dr. Blocker. *Id.* at 50-51. Dr. Barfield noted that Plaintiff was healing well but complained of pain over the left cheek, and that he was "too far out from injury for [surgical] intervention." *Id.* at 50. The results of the CT scan performed on December 16, 2008, were not available during this appointment, and it was noted the results would be mailed to Dr. Barfield for review. *Id.* at 51.

On February 3, 2009, March 20, 2009, and March 31, 2009, Plaintiff was seen by institution medical staff for refills of pain medication and complaints of moderate chronic pain of the left maxilla area. ECF No. 56-2 at 52-60. Plaintiff was continued on ibuprofen for pain management and instructed to return to sick-call if his condition did not improve. *Id.* On April 1, 2009, Defendant Barfield sent a report of his review of Plaintiff's CT scan to FCI-Edgefield. *Id.* at 61. Dr. Barfield indicated the CT scan revealed a well healed left trimalar fracture, but severe septal deviation to the left sinus with a spur touching the lateral nasal wall. *Id.* He also noted that because the fracture happened in August 2008, no intervention needed to be taken. *Id.*

4

On April 13, 2009, Plaintiff reported to the prison Health Services Department and informed medical staff that he was concerned that he was "not receiving treatment at the pace he would like." *Id.* at 62. Medical staff explained that the doctor had ordered another x-ray and consultation with the ENT on March 31, 2009, and that those actions were forthcoming. *Id.* at 63. Plaintiff "was satisfied." *Id.* On April 16, 2009, Plaintiff was scheduled for a follow-up appointment with the optometrist; however, he did not show for his appointment. *Id.* at 64. On July 14, 2009, x-rays of Plaintiff's left facial area were performed and revealed separation of the left frontal zygomatic. *Id.* at 68. On September 8, 2009, Plaintiff was seen by the staff physician during a chronic care clinic appointment. *Id.* at 70-73. Plaintiff stated that he believed his condition had "improved very little." *Id.* at 70. He was informed that an ENT consult was denied, but an optometrist consult was ordered to address Plaintiff's complaints about his eyes. *Id.* at 72. On September 11, 2009, and February 25, 2010, Plaintiff was seen during follow-up appointments by medical staff for complaints of chronic pain of his left cheek. *Id.* at 74-79. Plaintiff was continued on the medication naproxen for pain management and his condition continued to be monitored by medical staff. *Id.* On April 22, 2010, Plaintiff was scheduled for an appointment with the contract optometrist, but again, Plaintiff did not show for his appointment. *Id.* at 80.

On April 26, 2010, Plaintiff completed service of his federal sentence and was released from the BOP into the custody of the Immigration and Customs Enforcement, and he was subsequently deported to Mexico. *See* Blocker Decl., ECF No. 56-2 at 8. In August 2010, Plaintiff was arrested by federal authorities for illegal re-entry into the United States. *Id.* at 9. Following Plaintiff's conviction in federal court in March 2011, he was incarcerated at a private

5

contract facility. *Id.* While at this facility on January 19, 2011, a CT scan of his face was performed that revealed a nonunion/malunion fracture and leftward deviated nasal septum. *Id.* On May 19, 2011, Plaintiff was transferred to FCI-Edgefield. *Id.* During the in-take screening process Plaintiff stated he was experiencing pain from the fracture of his left cheek, and that he had been using bandages to "keep it in place." *Id.* He was given a prescription for a 180-day supply of naproxen for pain management. *Id.* On June 2, 2011, Plaintiff was seen by the staff physician during a chronic care clinic appointment and complained of face pain with a pain level of 7, as well as headaches. *Id.* at 9, 90-92. The staff physician initiated consultations with a maxillary facial surgeon for additional examination and treatment of the facial fracture. *Id.* at 92. According to Defendant Blocker, this referral was approved and, at the time of his August 24, 2011 declaration, was pending an appointment date. ECF No. 56-2 at 9.

Plaintiff contends that Defendant Rosario was negligent and assigned unqualified staff to treat his facial fracture and "delayed for no medical reason orders that MD, Hector Lopez requested on 3-31-2009 that new x-rays were to be done by 5-5-2009. Medical records show that x-rays were taken 7-10-09." ECF No. 31-1 at 3-4. Plaintiff contends that Defendant Barfield was negligent when he failed to write a medical report on August 15, 2008 when Dr. Barfield treated Plaintiff in the Aiken County Hospital after Plaintiff was injured; when Dr. Barfield "wrongly claimed that a fracture heals in 45 days then on 1-26-09 claimed that was to [sic] late and without seen [sic] the CT Scan that he previously had requested wrote that [Plaintiff] was healing on 1-26-09," and when he wrongly diagnosed in his April 1, 2009 report that Plaintiff had healed. ECF No. 31-1 at 3-4. Plaintiff alleges that Defendant Blocker "denied [Plaintiff] to be seen by an specialist ordered by Medical Doctor, Hector Lopez on 3-31-09;"

6

denied Plaintiff a new CT scan recommended by the radiologist; kept an inadequate system of records; and "failed to provide the specialist on 1/26/09 with disc and written report that he had have reviewed and received a month before on 12-22-2008 of a CT Scan taken of [Plaintiff's] facial fracture on 12/16/08." ECF No. 31-1 at 3-4.

In his request for relief, Plaintiff asks the court to award him $400,000 from each Defendant for emotional suffering caused by medical malpractice and negligence, and an additional $600,000 from each Defendant for the suffering and prolongation of pain caused by medical malpractice and negligence, for a total amount of $3,000,000. ECF No. 31-1 at 7.

II. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). If, on a motion pursuant to Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence and arguments submitted, the undersigned recommends that Defendants' motions be granted.

III. Analysis

   A. Applicable Law

Plaintiff is bringing suit against the employees and contractors of a federal prison, as such, his constitutional claims are evaluated under *Bivens*.[8] *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). Because a *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983, caselaw involving § 1983 claims is applicable in

---

[8] Plaintiff has also asserted claims pursuant to 42 U.S.C. § 1983. However, that statute is not applicable to Plaintiff's claims because none of the parties sued are state officials.

*Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-20, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994); *Bolin v. Story*, 225 F.3d 1234, 1241-1242 (11th Cir. 2000); *Campbell v. Civil Air Patrol*, 131 F. Supp. 2d 1303, 1310, n.8 (M.D. Ala. 2001) ("the court shall refer interchangeably to cases" decided under both § 1983 and *Bivens*).

    B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211, (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement which must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

9

The BOP has a three-tiered administrative grievance process. *See* 28 C.F.R. §§ 542.10 et seq. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id*. If dissatisfied with the response, the inmate may appeal to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel. *Id.* Appeal to the General Counsel is the final level of agency review. 28 C.F.R. §542.15(a). Here it is undisputed that Plaintiff met exhaustion requirements. ECF No. 56 at 4.

C. Negligence/Medical Malpractice

In his Amended Complaint, Plaintiff asserts medical malpractice claims against Defendants contending that Defendants improperly treated Plaintiff's facial fracture. ECF No. 31-1 at 3-4. Defendants contend that this claim should be dismissed. ECF Nos. 56 at 20-21, 59-1 at 7.

To the extent that Plaintiff is seeking to raise state law claims of negligence or medical malpractice, South Carolina law requires a plaintiff to file an affidavit of an expert witness with his complaint when asserting a claim of professional negligence against a professional licensed or registered with the State of South Carolina. S.C. Code Ann. § 15-36-100(B); *Martasin v. Hilton Head Health Sys. L.P.,* 613 S.E.2d 795, 799 (S.C. Ct. App. 2005); *Jernigan v. King*, 440 S.E.2d 379, 381 (S.C. Ct. App. 1993). It is undisputed that Plaintiff has failed to file an expert affidavit with his Amended Complaint, and therefore he cannot proceed with a state law claim of

negligence or medical malpractice against Defendants. The undersigned therefore recommends that this claim be dismissed.

   D. Defendants Blocker and Rosario's Motion to Dismiss, or in the Alternative, Summary Judgment[9]

   1. Official Capacity

Defendants Blocker and Rosario seek dismissal of Plaintiff's Amended Complaint arguing that a *Bivens* action cannot lie against federal agents acting in their official capacities. *Bivens* claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities; under *Bivens* inmates may not assert claims against the government or prison officials in their official capacities. *See FDIC v. Meyer,* 510 U.S. 471, 475, 484-86 (1994); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991); *Reinbold v. Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999.) The undersigned recommends that this motion be granted and that Plaintiff's claims against Defendants Blocker and Rosario in their official capacities be dismissed.

   2. Eighth Amendment Claim

Plaintiff alleges that Defendants Blocker and Rosario violated his Eighth Amendment rights by denying him proper medical treatment for his facial fracture when Defendants delayed his treatment, assigned unqualified staff, kept an inadequate system of records, and intentionally denied prescribed treatment. ECF No. 31-1 at 2-6. Defendants submit that they are entitled to summary judgment as to this claim. ECF No. 58 at 15-20.

---

[9] Because the Motion to Dismiss is styled in the alternative as one for summary judgment and attaches affidavits and medical records, the court considers Defendants' motion as a Motion for Summary Judgment.

"An inmate's complaint of inadequate medical care amounts to a constitutional violation if the inmate alleges 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, Plaintiff must present evidence sufficient to create a genuine issue of fact that Defendant was deliberately indifferent to his serious medical need. *Farmer*, 511 U.S. at 832-33; *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle,* 429 U.S. at 104-05. Deliberate indifference to a serious medical need requires proof that each Defendant knew of and disregarded the risk posed by Plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 837. An assertion of mere negligence or malpractice is not enough to state a constitutional violation; plaintiff must allege and demonstrate "[deliberate indifference] … by either actual intent or reckless disregard." *Miller v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). In other words, Plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller*, 896 F.2d at 851.

Defendants Blocker and Rosario concede that Plaintiff's facial fracture constitutes a "serious medical need." ECF No. 56 at 16-17. However, Defendants contend they are entitled to summary judgment because Plaintiff has not set forth a valid claim that they were deliberately indifferent to Plaintiff's medical needs. ECF No. 56 at 18-19. In support of summary judgment, Defendants offer Plaintiff's medical records and submit an affidavit from Defendant Rex Blocker, M.D, Clinical Director for FCI-Edgefield. ECF No. 56-2. Dr. Blocker attests that Plaintiff was seen and treated for his facial injuries by institutional medical staff and contract and

consultant physicians and specialists on numerous occasions from August 8, 2008 to June 2, 2011. ECF No. 56-2 at 1-9. Dr. Blocker explains that Plaintiff was never denied an opportunity to be seen by consultant specialists, and that Plaintiff had 18 encounters with the FCI-Edgefield medical staff, one encounter and several missed appointments with an optometrist, and two encounters with an ENT. ECF No. 56-2 at 1-10. Dr. Blocker attests that FCI-Edgefield medical staff, who are qualified professionals trained and authorized to provide preliminary and follow-up care of a facial fracture, properly and timely diagnosed Plaintiff's facial fracture and provided Plaintiff with proper treatment in accordance with BOP policies and recommendations given by consultant physicians and specialists. ECF No. 56-2 at 9. Dr. Blocker avers that Plaintiff received examinations, medical advice, instruction, diagnostic testing and consultation with an ENT and optometrist, and pain management and medications during this time period. ECF No. 56-2 at 10. Dr. Blocker testifies that any fracture, pain, or deformity still suffered by Plaintiff is a result of the facial trauma sustained, and not due to negligent medical care. *Id.*

Defendants also offer the affidavit of Defendant Luisa Fuertes Rosario, supervisor of the Health Services Unit at FCI-Edgefield, in support of their motion for summary judgment. ECF No. 56-3. Defendant Rosario attests that she does not provide medical treatment to inmates and that she was not involved in the decisions made regarding the medical care rendered to Plaintiff. ECF No. 56-3.

In response to Defendants' arguments, Plaintiff contends that Defendants delayed and denied medical treatment and failed to provide prescribed treatment for Plaintiff's facial fracture. ECF No. 79 at 2. Plaintiff also argues that Defendant Blocker delayed in providing his CT scan results to Defendant Barfield, which led to Dr. Barfield's alleged mistaken diagnosis that

Plaintiff was healing. ECF No. 79 at 6. Plaintiff avers that "[f]rom the beginning treatment was delayed, Defendant, Luisa Fuertes Rosario is administrator and she make appointment, whether for an specialist or x-rays ect … Decides dates or when it will be time to provide treatment." ECF No. 79 at 5. Plaintiff notes that his x-rays, which were ordered on March 31, 2009 and due by May 2009, were delayed until July 10, 2009. ECF No. 79 at 6. Plaintiff contends that he has to "live in this condition, because of the actions of defendants, treatment provided to Plaintiff is inadequate, pain pills and 'words' of counseling don't fix or cure a fracture of depressed zygomaticfacial bone stuck sank deep into zygomaticfacial nerve behind, deformated fractures, or septal deviation." ECF No. 79 at 9. Plaintiff also contends Defendants Blocker and Rosario are denying him prescribed treatment, that it has been five months since a consultation was requested for a plastic surgeon, and "[t]here is no medical reason for this delay." ECF No. 79 at 7.

Plaintiff has not proffered any responsive facts that indicate that summary judgment is inappropriate. Although Plaintiff points to a failure to timely provide his doctor with his CT scan, a two-month delay in receiving an x-ray, and a five-month delay[10] in approving a request for a plastic surgeon consultation, Plaintiff has not shown that these delays created a substantial risk of harm to Plaintiff. *See Webb v. Hamidullah*, 281 F. App'x 159, 167 (4th Cir. 2008)(finding that a delay in medical care only constitutes an Eighth Amendment violation when plaintiff can show the delay resulted in substantial harm). The record reflects that Defendants Rosario and Blocker made extensive efforts to assess and treat Plaintiff's facial fracture and resultant pain; the fact that Plaintiff disagrees with the course of his medical treatment is insufficient to

---

[10] Plaintiff offers an Inmate Request to Staff form dated July 22, 2011, to establish the five-month delay. ECF No. 79-1 at 4. Plaintiff's treatment records indicate the staff doctor requested the consultation on June 2, 2011. ECF No. 56-2 at 92.

establish medical indifference. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975) (finding that a disagreement between physician and inmate over the type of medical care provided is not enough to constitute deliberate indifference). Because Plaintiff has not established a viable claim for deliberate indifference, the undersigned recommends that summary judgment be granted as to Defendants Rosario and Blocker.

### 3. Qualified Immunity

Defendants Rosario and Blocker also assert that they are entitled to qualified immunity. ECF No. 43-1 at 16-18. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. at 818, established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case – that is, if it was not clear to

15

a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted – then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that, as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

   E. Defendant Barfield's Motion to Dismiss

      1. Eighth Amendment Claim

Plaintiff alleges deliberate indifference against Defendant Barfield for failing to write a medical report after Barfield treated Plaintiff's facial fracture on August 15, 2008. ECF No. 31-1 at 3. Defendant contends that this claim should be dismissed because Plaintiff has not alleged any facts suggesting that Defendant was deliberately indifferent to a serious medical need of Plaintiff. ECF No. 59-1 at 6. Defendant contends that he "provided the Plaintiff with a medical evaluation and recommendation on each occasion he was requested to do so" and that Plaintiff's issue appears to be that he "disagrees with the conclusion made by Defendant Barfield that surgery was not indicated or medically necessary." *Id.*

In response to Defendant Barfield's motion, Plaintiff contends that Defendant Barfield was reckless in the technique he used to diagnose Plaintiff when he diagnosed Plaintiff without physically examining Plaintiff. ECF No. 78 at 4-5. Plaintiff alleges that Defendant's inadequate

16

examination procedures prolonged Plaintiff's physical pain and emotional suffering. *Id.* Plaintiff also complains about Defendant's treatment recommendations and that Defendant was "very angry" and yelled at Plaintiff while he treated him. *Id.* at 5-7. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

The record reflects that Plaintiff has failed to establish that Defendant Barfield was deliberately indifferent to his serious medical needs. A review of Plaintiff's complaints establishes that Plaintiff did not believe that he received appropriate medical treatment for his condition. Such a claim must fail, however, because Plaintiff does not have a cause of action on the basis of a disagreement between him and his doctors over the correct medical treatment. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. . . . Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Mistakes of medical judgment are not subject to judicial review in a § 1983 action." *Werts v. Anderson*, No. 4:08-3291-TLW-TER, 2009 WL 5171306, at *12 (D.S.C. Dec. 18, 2009) (internal citations omitted). The undersigned recommends that the court grant Defendant Barfield's Motion to Dismiss as no claim rises to the level of a constitutional violation of deliberate indifference to a serious medical need. Therefore, even taking the allegations as true, Plaintiff does not state a claim for relief that is plausible on its face. *See Ashcroft*, 556 U.S. at 678-83.

F. Plaintiff's Motions

On September 21, 2011, Plaintiff filed a motion seeking to file a Second Amended Complaint. ECF No. 64. Plaintiff wanted to correct his original Complaint to add his signature, and sought as additional relief that he be "entitled to have the plastic surgery requested in consultation by MD, Hector Lopez on 06-01-2011." *Id.* at 1, 4. Because the undersigned recommends dismissal of Plaintiff's claims, the Motion to Amend his Complaint to add his signature and seek additional relief, ECF No. 64, is moot and should be denied.[11]

On October 25, 2011, after filing responses in opposition to Defendants' Motions to Dismiss/Motion for Summary Judgment, Plaintiff again moved to amend his Complaint "in the matter of jurisdiction." ECF No. 80 at 1. The Third Amended Complaint sought "to additionally name defendants Luisa Fuertes Rosario and Rex A. Blocker in their individual capacities and pursuant to 5 USC § 702." *Id.* Plaintiff asserted that the "change is pure technical" and was being made "because Plaintiff just learned that naming the defendants in their individual capacities Plaintiff will be seeking compensation from defendants rather than payment from their employer." *Id.* at 2.

As discussed above, the undersigned finds that Defendants Rosario and Blocker in their individual capacities are entitled to qualified immunity as described in *Harlow* and its progeny, as their conduct did not violate any constitutional right of Plaintiff. Accordingly, Plaintiff's Motion to Amend the Complaint, ECF No. 80, should be denied.

On October 17, 2011, Plaintiff moved to have the court appoint a lawyer to represent him in this matter. ECF No. 70. Plaintiff's Motion to Appoint Counsel should be denied as moot as

---

[11] Further, the Motion to Amend should be denied because it was filed after Defendants filed dispositive motions.

the undersigned recommends dismissal of all Plaintiff's claims. Even if the court does not dismiss Plaintiff's claims, denial of the Motion would still be appropriate. There is no right to appointed counsel in § 1983 or *Bivens* cases. *Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir. 1975). Although the court is granted the power to exercise its discretion to appoint counsel for an indigent in a civil action, 28 U.S.C. § 1915(e)(1); *Smith v. Blackledge*, 451 F.2d 1201 (4th Cir. 1971), such appointment "should be allowed only in exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Plaintiff in his motion has not shown that any exceptional circumstances exist in this case. After a review of the file, this court has determined that there are no exceptional or unusual circumstances presented that would justify the appointment of counsel, nor would Plaintiff be denied due process if an attorney were not appointed. *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984). Accordingly, Plaintiff's request for appointment of counsel should be denied.

IV. Conclusion and Recommendation

Based on the foregoing, the undersigned recommends the Motion to Dismiss, or in the alternative, Summary Judgment filed by Defendants Blocker and Rosario, ECF No. 56, and the Motion to Dismiss filed individually by Defendant Barfield, ECF No. 59, be GRANTED. The undersigned further recommends that Plaintiff's Motions to Amend, ECF Nos. 64 and 80, and Motion to Appoint Counsel, ECF No. 70, be DENIED.

IT IS SO RECOMMENDED.

June 29, 2012  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**